In the Matter of the Determination by the COUNTY OF WESTCHESTER, with Respect to a Proposed New Highway Known as Hutchinson River Parkway, to Be Constructed across the Steam Surface Railroad of the New York, New Haven and Hartford Railroad Company in the Villages of Pelham and North Pelham in Said County, and for Making Application to the Public Service Commission as to the Manner of Such Crossing.

THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Appellant; THE WESTCHESTER COUNTY PARK COMMISSION, Respondent.

Second Department, February 11, 1927.

Highways — proceeding instituted by county under Railroad Law, § 90, to lay out new street, crossing appellant's right of way in villages of Pelham and North Pelham — board of supervisors had power to determine necessity for laying out new street though street will be under jurisdiction of Westchester county park commission (Laws of 1922, chap. 292).

In proceedings instituted by the county of Westchester under section 90 of the Railroad Law for the purpose of determining the necessity of a new street known as Hutchinson River Parkway crossing appellant's railroad in the villages

Second Department, February, 1927.          [Vol. 219

of Pelham and North Pelham, the board of supervisors had jurisdiction under said section 90 to determine the necessity of laying out said new street, though jurisdiction of the street when laid out will be under the Westchester county park commission by virtue of chapter 292 of the Laws of 1922 which created that commission.

APPEAL by the New York, New Haven and Hartford Railroad Company from a determination of the board of supervisors of the county of Westchester, filed in the office of the clerk of said board on the 2d day of February, 1926, that a new street is necessary crossing the New York, New Haven and Hartford railroad in the villages of Pelham and North Pelham.

*Charles M. Sheafe, Jr.*, for the appellant.

*Henry R. Barrett* [*Charles H. Peck* with him on the brief], for the respondent.

YOUNG, J. This proceeding was instituted by the county of Westchester under section 90 of the Railroad Law for the purpose of determining the necessity of a street known as Hutchinson River Parkway crossing the appellant's railroad. Notice was given to the appellant of a hearing before the board of supervisors on January 25, 1926, as to such necessity. The appellant appeared at this hearing and the Westchester county park commission also appeared by its counsel. The latter explained the purpose of the hearing, claiming that where there were new crossings like the one in question, it became necessary that the railroad company should pay half the expense. The appellant claimed that the board of supervisors had no jurisdiction in the matter and that the expense should be entirely borne by the county. On February 1, 1926, the board of supervisors adopted a resolution which recited the notice to the appellant of the county's intention to lay out the new street in question, the appearances and the hearing, and determined that the street was necessary, and that the county, through the park commission, would apply to the Public Service Commission to determine whether such street or road should pass over or under the railroad or at grade, etc.

Pursuant to section 91 of the Railroad Law, the railroad company appeals to this court. The appeal involves a construction of section 90 of the Railroad Law and its application to the situation presented in the case at bar. It also involves a construction of the Westchester County Park Commission Act, chapter 292 of the Laws of 1922.

Section 90 of the Railroad Law, so far as material, provides as follows: " When a new street, avenue, highway or road or new portion or additional width of a street, avenue, highway or

road, or a State or county highway or county road deviating from the line of an existing highway or road, shall hereafter be constructed across a steam surface railroad, other than pursuant to the provisions of section ninety-one of this chapter, such street, avenue, highway or road, or new portion or additional width of a street, avenue, highway or road, shall pass over or under such railroad whenever such construction is practicable. Notice of intention to lay out such street, avenue, highway or road, or such new portion or additional width of a street, avenue, highway or road across a steam surface railroad shall be given to such railroad corporation by the municipal corporation at least fifteen days prior to the making of the order laying out such street, avenue, highway or road or such new portion or additional width of a street, avenue, highway or road by service personally on the president or vice-president of the railroad corporation or any general officer thereof. In case of the construction of a State or county highway which deviates from the line of an existing highway across a steam surface railroad, a like notice shall be given to such railroad corporation by the State Commission of Highways at least fifteen days prior to the adoption of the maps, plans and specifications for such State or county highway by such Commission. Such notice shall designate the time when and place where a hearing will be given to such railroad corporation, and such railroad corporation shall have the right to be heard before the authorities of such municipal corporation upon the question of the necessity of such street, avenue, highway or road or such new portion or additional width of a street, avenue, highway or road, or before the State Commission of Highways in case of a State or county highway, on the question of the location of such highway."

It then provides in substance that, if the necessity of the street or road is determined, application shall be made to the Public Service Commission which may determine whether the street or road shall cross the railroad over or under the railroad or at grade. It further provides in some detail the procedure before the Public Service Commission and for its determination.

Section 3 of the Highway Law (as amd. by Laws of 1912, chap. 83, and Laws of 1916, chap. 578) divides highways into four classes: (1) State highways, which are those constructed or improved under that law at the sole expense of the State; (2) county highways, which are highways constructed or improved at the joint expense of the State, county and town or State and county, with certain exceptions not material here; (3) county roads, which are those designated as such by special or general law and constructed, improved, maintained and repaired by the county as such, in

counties where the county road system has been or may be adopted; and (4) town highways, which are those constructed, etc., by the town with State aid. The county road system is defined by section 320-a of the Highway Law (added by Laws of 1914, chap. 61, as amd. by Laws of 1923, chap. 430) which enacts that the board of supervisors may provide for the construction of a highway or a section thereof in one or more towns of the county at the joint expense of the county and town or towns and may prepare a map of a definite system of county roads.

It seems to be quite clear from the above definitions that the new street proposed in the case at bar cannot be a highway, State, county or town, nor a county road within the meaning of the above definitions. It will be noted that section 90 of the Railroad Law provides different procedure with relation to " a new street, avenue, highway or road," etc., and that relating to a State or county highway or a county road. In the former case the municipal corporation has jurisdiction to determine the necessity of the street; in the latter the State Commission of Highways (now the Superintendent of Public Works, chapter 867 of the Laws of 1923) has such jurisdiction. If, therefore, the board of supervisors of Westchester county had jurisdiction to make this determination, it must be because the new street is " a new street, avenue, highway or road or new portion or additional width of a street, avenue, highway or road," within the meaning of section 90 (supra), and it must be a new street of the municipality, the county of Westchester, and also, perhaps, one over which the county has jurisdiction as such municipal corporation. Ordinarily, of course, jurisdiction over streets, avenues, highways or roads, aside ·from those defined by section 3 of the Highway Law (supra), is in the cities, towns and villages of a county through which those streets, etc., run, and, in the case at bar, such jurisdiction would be in the villages of Pelham and North Pelham. But the complication in the proceeding at bar arises from the provisions of the Westchester County Park Commission Law and the jurisdiction of that commission over such parkways.

The Westchester county park commission was created by chapter 292 of the Laws of 1922. Broadly speaking, that act gives the park commission power to acquire lands for park purposes when approved and authorized by the board of supervisors, and that board is required to provide the money for that purpose, the title of such lands to be taken in the name of the county. By section 14 of the act the park commission is given " sole and exclusive control and management of all the streets and highways and bridges within the limits of any park under its jurisdiction,

with the right and power to alter or discontinue any or all of such streets, highways and bridges and all streets, highways, parkways, or boulevards taken over as in this act provided shall be built, maintained and kept in order and repaired by and under the direction of the park commission." Its consent is required to enable railroad and other public utilities to pass over the park property, but it has the right to grant the county of Westchester or any governmental agency thereof or to any municipal corporation therein, etc., a license or easement for any public purpose upon terms and conditions deemed by the commission just and proper. By section 16 the park commission is also authorized to bring and maintain in the name of the county any action or proceeding necessary to carry out the purposes of the act. Section 5 of this act (as amd. by Laws of 1925, chap. 119) defines the term "real estate," providing *inter alia* as follows: "It shall also be construed to include all real property or interest therein heretofore or hereafter acquired or used for railroad, railway, highway or other public or municipal purposes, provided that persons or corporations owning such property or claiming interest therein which is used as a public utility shall be allowed the perpetual use for such purpose, or of such other real estate to be acquired for the purposes of this act as will afford practical route or location for such railroad, highway or other public utility purpose and commensurate with and adapted to its needs and provided also that such persons or corporations shall not directly or indirectly be subject to expense, loss or damage by reason of change in such route or location, but such expense, loss or damage shall be borne in like manner as the expenses incurred in carrying out the provisions of this act."

Section 90 of the Railroad Law does not in terms include these parkways. It is, however, contended by the respondent that these various parkways are a recent development in consequence of the increase of population and the use of motor vehicles, and it is urged that their characteristic needs have not yet found specific mention in general laws except in subdivision 3, section 105 of the Public Service Commission Law, where they are defined as included in the word " street." The fact that they are so mentioned in the Public Service Commission Law and not in the Railroad Law would seem to indicate an intention by the Legislature to exclude them from the operation of the latter law. In other words, in those acts which the Legislature intended to affect the parkways, they are provided for by appropriate definition; where it is intended that they be excluded, they are not mentioned. Although these parkways are a recent development, they are not more recent than the last amendment made to section 90 of the Railroad Law

Second Department, February, 1927.    [Vol. 219

by chapter 481 of the Laws of 1924, by which this whole subject of railroad crossings was altered by numerous and extensive amendments. Long prior to the passage of this act, the Legislature had made provision for the acquisition of numerous parks, and, in 1922, it created the Westchester county park commission and provided for the park system of that county.

Section 105 of the Public Service Commission Law, in subdivision 3 of which the word " street " is defined to include parkways, was added to that law by section 69 of chapter 134 of the Laws of 1921. It cannot, therefore, be assumed that the Legislature did not have in mind, when it amended the Railroad Law as above, in 1924, that the ordinary definition of the word " street " would not include a parkway, and the Railroad Law contains no such definition.

Of course, this may not be necessarily fatal to this proceeding, if the language of section 90 can be construed as sufficiently broad to include the new street under construction.

The Westchester County Park Commission Act seems to be a complete scheme for the exclusive jurisdiction, control and management by the park commission of these parks, and the streets therein, beyond the control of the county or its board of supervisors, and it is contended by appellant that the provisions of section 5 of the Westchester County Park Commission Act indicate that any rights or interests to be acquired over the railroad must be so acquired without expense directly or indirectly on the part of the railroad, and must be borne by the county " in like manner as the expenses incurred in carrying out the provisions of this act," and that the expression " real property or interest therein " of a railroad includes the relocation of the railroad above, under or at the grade of the new street.

Upon the whole, I think this determination may be sustained upon the ground that this new street is within the county of Westchester and is owned by that county, the county being a municipal corporation. It is a street of that municipality, and comes literally within the language of section 90, which does not require that the municipal corporation shall have any jurisdiction over the street, but simply requires, in substance, notice to the railroad by the municipal corporation of its intention to lay out the street in question. There does not seem to be any limitation upon the words " municipal corporation," contained in section 90. A construction of section 90 of the Railroad Law, which will include this new street, is simply following the general policy of the State, through its legislative enactments, of charging the railroad corporations one-half the cost of these crossings, and it is not to be

assumed that the Legislature intended any departure from this policy by the enactment of section 5 of the Westchester County Park Commission Act.

If section 90 of the Railroad Law does not apply, the Public Service Commission will have no jurisdiction to determine the character and method of the crossing. This crossing may then be made by agreement of the parties. If they do not agree, apparently no way is provided to determine as to its character and method, unless section 5 of the Park Commission Act gives the parkway commission the right to determine this question and to condemn the appropriate easement. This, of course, is contrary to the general policy of the State to place the matter of railroad crossings in the hands of the Public Service Commission.

The question is not free from doubt, but, in my opinion, the action of the board of supervisors should be sustained.

The determination appealed from should, therefore, be affirmed, without costs.

Present — KELLY, P. J., MANNING, YOUNG, KAPPER and LAZANSKY, JJ.

Determination of the board of supervisors of Westchester county unanimously affirmed, without costs.